**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AMY PATRICK, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-169-SLR-SRF |
| | ) | |
| RELIANCE STANDARD LIFE | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

**I.     INTRODUCTION**

On February 19, 2015, Amy M. Patrick, M.D. ("Dr. Patrick"), filed this action against
Reliance Life Insurance Company ("Reliance") pursuant to the Employment Retirement Income
Security Act of 1974 ("ERISA") 29 U.S.C. § 1001 *et seq.*  (D.I. 1) Reliance entered into a
contract with Mid-Atlantic G.I. Consultants ("MAGIC") to provide Long Term Disability
("LTD") benefits to MAGIC employees (the "Plan").  (D.I. 28 at 2) Dr. Patrick has been
employed by MAGIC as a gastroenterologist since 1996.  (D.I. 30 at 2) Dr. Patrick began
receiving LTD benefits on April 15, 2009.  (*Id.* at 7-8) Dr. Patrick asserts that Reliance's
subsequent decisions to reduce her LTD benefits were arbitrary and capricious.  (*Id.* at 1-2)

Currently before the court are the parties' cross-motions for summary judgment and
Reliance's motion for leave to file a sur-reply.  (D.I. 27; D.I. 29; D.I. 41) For the reasons set
forth below, and as indicated by the chart, *infra*, I recommend that the court deny Dr. Patrick's
motion for summary judgment, grant Reliance's motion for summary judgment, and deny
Reliance's motion for leave to file a sur-reply as moot.

| Party | Motion | Recommendation |
|---|---|---|
| Plaintiff, Amy Patrick, M.D. | Motion for Summary Judgment (D.I. 29) | Denied |
| Defendant, Reliance Standard Life Insurance Co. | Motion for Summary Judgment (D.I. 27) | Granted |
| Defendant, Reliance Standard Life Insurance Co. | Motion for Leave to File Sur-Reply in Opposition to Plaintiff's Motion for Summary Judgment (D.I. 41) | Denied as Moot |

## II.   BACKGROUND

### A.   Dr. Patrick's Employment at MAGIC and Medical History

Dr. Patrick began working for MAGIC as a gastroenterologist in 1996.  (D.I. 30 at 2) On

November 1, 2005, Dr. Patrick entered into a shareholder-physician employment agreement with

MAGIC (the "Employment Agreement").  (*Id.* at 3) According to the Employment Agreement,

Dr. Patrick's compensation is calculated by subtracting her "shared expenses" from her "gross

collections."  (*Id.* at 4) The Employment Agreement allows Dr. Patrick to be paid an agreed upon

monthly salary draw if MAGIC and Dr. Patrick reconcile such draw against the amounts actually

due to Dr. Patrick at least quarterly.  (Tr. at 1841-42)[1]

On January 2, 2007, Dr. Patrick sustained nerve damage while undergoing a surgical

procedure to remove a lymph node from her neck.  (D.I. 30 at 2) The nerve damage caused

significant loss of shoulder mobility.  (*Id.*) Although the nerve damage could not be repaired, in

July of 2008, she underwent a re-attachment surgery involving her right shoulder blade.  (*Id.*)

Twenty months after the surgery, Dr. Patrick was still symptomatic.  (*Id.* at 3) Accordingly, her

surgeon determined that she was permanently partially disabled, as she was no longer able to

perform her work as a full-time gastroenterologist.  (*Id.*)

---

[1] All citations to "Tr." refer to the transcript of the Joint Stipulated Administrative Record, which is electronically docketed under seal at D.I. 20.

Dr. Patrick alleges that her disability prevented her from generating sufficient income to cover her share of MAGIC's business operating expenses,[2] which she contends she was obligated to satisfy under the Employment Agreement. (*Id*. at 2-4) Consequently, by January 2015, Dr. Patrick's "Overall Capital Account"[3] balance was negative $379,909.33. (*Id*. at 5)

## B.    The LTD Plan

Reliance issued the LTD Plan to MAGIC on September 1, 2007. (D.I. 1, Ex. A at 2) The Plan is governed by ERISA. (Tr. at 1) Under the Plan, Reliance "serve[s] as the claims review fiduciary with respect to the insurance policy and the Plan." (*Id*. at 15) As the claims review fiduciary, Reliance "has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." (*Id*.)

The Plan pays a monthly benefit to an employee if the insured is either "Totally Disabled"[4] or "Partially Disabled."[5] LTD benefits equate to 60% of pre-disability earnings, at a maximum amount of $12,000 per month, subject to an offset by "Other Income Benefits."[6] (D.I. 30 at 5) Benefits are paid out of Reliance's own funds, accumulated from plan premiums. (*Id*. at 13)

The Plan also includes a Rehabilitation Provision, which provides that if an insured employee is Totally Disabled, but still able to perform work on a limited basis, the employee's

---

[2] The Employment Agreement defines "shared expenses," which are business overhead items. (Tr. at 1842)

[3] "Overall Capital Account" is not defined in the Employment Agreement or the LTD Plan. Dr. Patrick uses the term in her appeal letters to Reliance without defining it. (Tr. at 982)

[4] Under the Plan, an employee is "Totally Disabled" if he or she "cannot perform the material duties of his/her regular occupation." (Tr. at 12)

[5] Under the Plan, an employee is "Partially Disabled" if he or she can only perform the material duties of his or her regular occupation on a part-time basis. (Tr. at 12)

[6] The Plan defines "Other Income Benefits" to include income from a broad range of sources such as other group insurance plans, benefits under workers compensations laws, and retirement benefits. (Tr. at 19)

3

LTD benefits are reduced by 50% of earnings received through such employment.[7]  (*Id.* at 6-7)

The Rehabilitation Provision states:

> "Rehabilitative Employment" means work in any gainful occupation for which the insured's training, education or experience will reasonably allow. The work must be supervised by a Physician or a licensed or certified rehabilitation specialist approved by us. Rehabilitative Employment includes work performed while Partially Disabled, but does not include performing all the material duties of his/her Regular Occupation on a full-time basis.

> If an insured is receiving a Monthly benefit because he/she is considered Totally Disabled under the terms of this Policy and is able to perform Rehabilitative Employment, we will continue to pay the Monthly Benefit less an amount equal to 50% of earnings received through such Rehabilitative Employment.
> ...

(Tr. at 33) The Plan does not define the terms "earnings" or "earnings received." However, Reliance does define "Covered Monthly Earnings" as the insured's monthly salary received on the first of the policy month just prior to the date of total disability. (*Id.* at 11) "Covered Monthly Earnings" do not include commissions, overtime, or any other special compensation. (*Id.*) If earnings from rehabilitative employment fluctuate from month to month, the deduction under the Rehabilitation Provision fluctuates accordingly. (D.I. 28 at 6)

The Plan sets forth a three-year statute of limitations period for an insured to bring a lawsuit against Reliance to recover benefits under the LTD policy. (Tr. at 16)

## C.  Dr. Patrick's Benefits History

Reliance approved Dr. Patrick's claim for LTD benefits on April 15, 2009, as she was determined to be "Totally Disabled" under the Plan. (D.I. 30 at 7-8) Using a "Covered Monthly Earnings" amount of $20,000, Reliance determined that Dr. Patrick was eligible for the $12,000

---

[7] For example, if an employee is receiving $12,000 per month in benefits and generates a net income of $4,000 through rehabilitative employment, the benefit is reduced by $2,000, totaling $10,000.

maximum benefit, retroactively effective on October 8, 2008. (*Id.*) Reliance consistently paid

and continues to pay Dr. Patrick LTD benefits. (D.I. 28 at 3) On May 18, 2010, while reviewing

MAGIC's April 2010 financial statement, Reliance discovered that Dr. Patrick had $13,468.16 in

net income for March 2010. (D.I. 30 at 8) On September 22, 2010, Reliance notified Dr. Patrick

that her benefits would be reduced by 50% of her net income pursuant to the Rehabilitation

Provision. (*Id.*) Dr. Patrick was also notified of her right to appeal. (D.I. 28 at 4)

Dr. Patrick appealed Reliance's determination on September 23, 2010. (Tr. at 982-85)

Dr. Patrick argued that Reliance erroneously interpreted the Rehabilitation Provision because

under the Employment Agreement, she was not eligible to receive income while her Overall

Capital Account balance was negative. (*Id.* at 982; D.I. 30 at 8)

The Employment Agreement states that an employee shall receive "total compensation"

as follows:

> Employers shall first determine the gross collections...from all clinical services
> provided by the Employee, and to such amount shall be added the Employee's
> equal (prorated) share of any net profit generated by all non-shareholder
> physicians and/or other employees employed by the Employer (the sum of which
> is referred to below as Employee's "gross collections").
> ...
>
> From the sum of such Employee's gross collections...shall be subtracted the
> Employee's allocation of the "shared expenses"...defined as the rent, utilities and
> associated costs for all offices used by the physician employed by the Employer,
> all of the telephone expenses of the Employer, the costs, salaries, and retirement
> plan contributions, etc. of all non-physician staff employed by the Employer, and
> all other of the Employer's expenses for which the shareholders of the Employer
> agree are used or are to be used in common.
> ...
>
> Employee's gross collections shall then be reduced by her allocated portion of the
> shared expenses, and the balance thereof shall be the "total compensation" due to
> Employee for services rendered.
> ...
>
> Employer and Employee shall calculate such amounts on a quarterly basis, and
> although Employee may be paid an agreed upon salary "draw" or base salary on a

5

monthly basis, Employer and Employee agree to reconcile such draw against the amounts actually due to the Employee pursuant to paragraph 4 at least quarterly.

(Tr. at 1841-42)

On November 16, 2010, Reliance rejected the appeal. (D.I. 28 at 5) Reliance explained that Dr. Patrick was eligible to receive benefits under the Rehabilitation Provision, as she had returned to gainful employment. (*Id.*) While Dr. Patrick's earnings might be retained and applied against her negative Overall Capital Account balance, Reliance determined that she was, nonetheless, earning income. (*Id.* at 6) Therefore, the Plan would continue to pay benefits offset by 50% of earnings generated. (*Id.*) Reliance informed Dr. Patrick that the decision was final, she had exhausted her administrative remedies, and she had a right to file suit. (*Id.*)

Pursuant to the Rehabilitation Provision, Reliance continued to reduce Dr. Patrick's LTD benefits throughout 2010. (*Id.*) On March 4, 2011, Dr. Patrick appealed the benefit calculation for July through October of 2010, again arguing that she did not receive earnings because of her negative Overall Capital Account balance at MAGIC. (*Id.*) Reliance rejected the request for another appeal, as the appeal review had already been closed. (Tr. at 1627)

From January 2011 to November 2013, Dr. Patrick did not work and received the full $12,000 monthly benefit. (D.I. 28 at 6) Reliance monitored Dr. Patrick's financial records throughout the benefit period and observed that Dr. Patrick had $19,000 of net income in November of 2013. (*Id.*) Therefore, Reliance applied the Rehabilitation Provision's 50% reduction for that month. (*Id.*) On January 24, 2014, Dr. Patrick tried to challenge the manner in which the Rehabilitation Provision was interpreted, again asserting that her benefits were erroneously reduced because she was not receiving income due to her negative Overall Capital Account balance at MAGIC. (*Id.*) Reliance denied the challenge because Dr. Patrick had already exhausted her available appeals on the issue. (*Id.*)

6

On September 12, 2014, Reliance determined that Dr. Patrick received Other Income pursuant to a separate Plan provision based on her ownership interest in MAGIC. (Tr. at 1654-55) Based on Dr. Patrick's receipt of passive income attributable to her equity interest, Reliance believed that it overpaid her benefits by $123,689.28. (*Id.*) Reliance permitted Dr. Patrick to appeal this matter because it deemed this a separate adverse determination, made pursuant to a Plan provision unrelated to the Rehabilitation Provision. (D.I. 28 at 8) In her appeal, Dr. Patrick also attempted another challenge to Reliance's interpretation of the Rehabilitation Provision. (*Id.*) On January 9, 2015, Reliance reversed its finding on the Other Income provision in Dr. Patrick's favor. (*Id.*)

In the course of its review of the Other Income appeal, Reliance hired a Certified Public Accountant ("CPA"), Connie Cardamone, to provide a new accounting analysis of Dr. Patrick's earnings received under the Rehabilitation Provision, and to retroactively recalculate her benefits if necessary. (Tr. at 1645-46) Ms. Cardamone determined that, because certain income and expenses at MAGIC were inconsistently applied to Dr. Patrick's account, Dr. Patrick's benefits should be adjusted using a monthly average of annual net profit or loss rather than adjusting benefits monthly. (*Id.*)

Reliance asserts that there were no year-end statements for 2010 to 2011. (*Id.*) To determine Dr. Patrick's income for that period, Ms. Cardamone used financials from 2007 to 2009. (*Id.*) Accordingly, she calculated that Dr. Patrick's Overall Capital Account balance was negative $167,015 as of December 31, 2009. (*Id.*) Ms. Cardamone then worked back from the November 2014 statement to determine that by December 31, 2011, Dr. Patrick had a negative Overall Capital Account balance of $57,498. (*Id.*) Using the difference between the two balances, Ms. Cardamone concluded that Dr. Patrick had positive earnings of $109,517 from

7

2010 to 2011. (*Id.*) Finally, Ms. Cardamone used 2010 through 2011 monthly statements to

conclude that Dr. Patrick did not earn income in 2011. (*Id.*) Therefore, Dr. Patrick must have

earned the $109,517, or $9,126.42 per month, during 2010. (*Id.*) Reliance notified Dr. Patrick of

this new calculation under the Rehabilitation Provision in its January 9, 2015 letter addressing

the Other Income appeal. (*Id.*) Subsequently, Reliance retroactively applied a reduction to Dr.

Patrick's 2010 benefits pursuant to the Rehabilitation Provision. (*Id.*) Using this recalculation,

Reliance determined that from July through October of 2010, Dr. Patrick was underpaid by

$17,659.07, but she was overpaid $36,505.68 from January through June and November to

December of 2010. (D.I. 34 at 19-20)

Dr. Patrick was credited for the net underpayment. (*Id.*) Reliance also reiterated its

position regarding application of the 50% reduction under the Rehabilitation Provision, and that

Dr. Patrick had exhausted her administrative remedies regarding the same. (D.I. 28 at 9)

On February 19, 2015, Dr. Patrick filed the complaint in this court. (D.I. 1) In relevant

part, the complaint alleges that:

> 38. Defendant Reliance has erroneously interpreted the plain and ordinary
> meaning of the LTD Policy and improperly reduced Plaintiff's long term
> disability monthly payments based on their wrongful claim that she is entitled to
> receive income from [MAGIC].
>
> 39. As a result, [Reliance] has wrongfully denied Plaintiff all of her benefits for
> the month of November 2013.
>
> 40. [Reliance] has also wrongfully claimed that it [overpaid] Dr. Patrick's
> monthly benefits from 2010 through the present and is wrongfully seeking
> reimbursement from Dr. Patrick of that alleged overpayment of monthly benefits
> from 2010 through the present.
>
> 41. [Reliance's] reduction of Dr. Patrick's monthly disability benefits is contrary
> to the terms of the LTD Policy and Plan.
>
> 42. [Reliance's] decisions to deny Plaintiff all of her benefits and claim
> repayment were erroneous and unreasonable.

(*Id*. at ¶¶ 38-42)

The parties filed cross-motions for summary judgment on October 1, 2015. (D.I 27; D.I. 29) Dr. Patrick asks the court to "[i]nterpret the term, '*earnings received*'…to mean Dr. Patrick does not receive a salary, wages or net income until the balance of her [Overall Capital Account] is positive…." (D.I. 30 at 25) Dr. Patrick also seeks an order requiring "Reliance to recalculate Dr. Patrick's monthly benefits from 2009 to the present consistent with the Court's interpretation of '*earnings received*' and pay Dr. Patrick benefits that were erroneously reduced due to Reliance's offsets under the Rehabilitation Benefit provision." (*Id*.) Reliance asserts that Dr. Patrick's claims are moot or barred by the statute of limitations. (D.I. 28 at 19-20) Alternatively, Reliance asserts that the administrative decisions should be upheld. (*Id*.)

On November 25, 2015, Reliance filed a motion for leave to file a sur-reply in response to Dr. Patrick's motion for summary judgment. (D.I. 41) Dr. Patrick opposes the motion. (D.I. 44)

## III.   LEGAL STANDARDS

### A.   Summary Judgment

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).  "Facts that could alter the outcome are material, and disputes are genuine if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life*

9

*Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *See id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions. *Appelmans v. City of Phila.,* 826 F.2d 214, 216 (3d Cir.1987). Cross-motions for summary judgment

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

*Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968). "The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party." *United Ass'n of Journeymen & Apprentice Plumbers & Pipefitters v. Int'l Bhd. of Elec. Workers,* C.A. No. 12-1060-GMS-SRF, 2015 WL 1516948, at 2 (D. Del. Mar. 31, 2015), *aff'd*, 643 Fed. App'x 133 (3d Cir. 2016) (quoting *Krupa v. New Castle Cnty.,* 732 F. Supp. 497, 505 (D. Del. 1990)).

## B.    ERISA Standard of Review

ERISA allows a beneficiary to bring a civil action against an administrator or fiduciary to recover benefits due under the terms of a benefit plan. *See* 29 U.S.C. § 1132(a)(1)(B).[8]  Courts should review a denial of insurance benefits "under a *de novo* standard" unless the plan grants discretionary authority. *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 111 (2008) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)).  If a plan grants discretionary authority to an administrator or fiduciary, a court must apply the arbitrary and capricious standard when reviewing administrative decisions. *See id.*  Under this standard, the plaintiff has the burden of showing that the administrator's denial of benefits was "without reason, unsupported by substantial evidence or erroneous as a matter of law" using the evidence available to the administrator at the time of the decision. *Johnson v. UMWA Health & Ret. Funds*, 125 F. App'x 400, 405 (3d Cir. 2005) ("This Court has made clear that the record for arbitrary and capricious review of ERISA benefits denial is the record made before the plan administrator which cannot be supplemented during litigation.").  "A decision is supported by substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision." *Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000) (citation omitted).  Thus, when a plaintiff disputes the benefit denial under a plan that grants discretionary authority to the administrator, the court's task is to determine "whether or not, based on the undisputed administrative record, [the administrator's] decision was an abuse of discretion." *Malin v. Metro. Life Ins. Co.*, 845 F. Supp. 2d 606, 611-12 (D. Del. 2012) (quoting

---

[8] The statute states in part: "A civil action may be brought—(1) by a participant or beneficiary— ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

*Kao v. Aetna Life Ins. Co.*, 647 F. Supp. 2d 397, 409 (D.N.J. 2009)); *see also Marciniak v. Prudential Fin. Ins. Co. of Am.*, 184 F. App'x 266, 270 (3d Cir. 2006).

### C. Statute of Limitations

The parties agree that Delaware's one year statute of limitations for claims for recovery of benefits, as well as ERISA claims under 29 U.S.C. § 1132(a)(1)(B), applies to the present action. *See* 10 Del. C. § 8111; *see also Syed v. Hercules, Inc.*, 214 F.3d 155, 159 (3d Cir. 2000) (holding that the one year statute of limitations at 10 Del. C. § 8111 is applicable to claims for recovery of benefits under an ERISA plan); (D.I. 28 at 12; D.I. 30 at 24) Pursuant to 10 Del. C. § 8111:

> No action for recovery upon a claim for wages, salary, or overtime for work, labor or personal services performed, or for damages…, or for interest or penalties resulting from the failure to pay any such claim, or for any other benefits arising from such work, labor or personal services performed or in connection with any such action, shall be brought after the expiration of 1 year from the accruing of the cause of action on which such action is based.

10 Del. C. § 8111.

The issue in contention is when the cause of action accrued. (D.I. 28 at 12; D.I. 30 at 24) The accrual date for an ERISA claim is the date that the defendant clearly repudiates coverage. *See Miller v. Fortis Benefits Ins., Co.*, 475 F.3d 516, 520 (3d Cir.2007). For example, "an erroneously calculated award of benefits under an ERISA benefit plan can trigger[] the statute of limitations, as long as it is (1) a repudiation; and (2) is clear and made known to the beneficiary." *Id.* at 521 (citation omitted). "[A] new cause of action [does not] accrue upon each [alleged] underpayment of benefits owed under the plan. *Id.* at 522; *see also Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 213-14 (3d Cir. 2001) (rejecting the continuing violation approach).

12

## IV.   DISCUSSION

In the present action, the parties agree that Reliance had discretionary authority to determine claim eligibility. (D.I. 28 at 11; D.I. 30 at 14) Because of that authority, the court must review Reliance's benefits determinations under the arbitrary and capricious standard using only the evidence available to Reliance at the time of its decisions. *See Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 111 (2008). Reliance contends that summary judgment should be granted in its favor because Dr. Patrick's claims are time-barred, Reliance's policy interpretation was reasonable, and Dr. Patrick's overpayment claim is moot. (D.I. 28) Dr. Patrick argues that her claims are not time-barred, and she identifies five reasons why summary judgment is warranted in her favor: (1) Reliance operated under a structural conflict of interest; (2) Reliance failed to comply with § 503 of ERISA and 29 C.F.R. § 2560.503-1; (3) Reliance failed to properly construe the Rehabilitation Provision in an ordinary and plain manner as would a person of average intelligence; (4) Reliance inappropriately recalculated Dr. Patrick's benefits using passive income from other entities; and (5) Reliance unfairly took double deductions in 2010. (D.I. 30)

### A.   Statute of Limitations

Reliance argues that Dr. Patrick's ERISA claims are time-bared by the applicable one year statute of limitations, 10 Del. C. § 8111, and Delaware's three year limitations period for breach of contract actions, 10 Del. C. § 8106(a). (D.I. 28 at 12-15) Reliance contends that Dr. Patrick's claims accrued on November 16, 2010, the date Reliance issued its final determination on Dr. Patrick's appeal of whether she received earnings under the Rehabilitation Provision. (*Id.* at 12) At that point, Dr. Patrick exhausted her remedies regarding the same. (*Id.* at 13) Reliance argues that a new cause of action did not accrue with the January 9, 2015 Other Income decision

letter because Reliance merely conducted a "voluntary, extra-contractual review" of Dr. Patrick's Rehabilitation benefits therein. (*Id.* at 13-14) Reliance's interpretation of the Rehabilitation Provision remained the same since its initial 2010 findings. (*Id.* at 14-15) Reliance asserts that Dr. Patrick may not use a subsequent recalculation to extend the statute of limitations on that issue. (*Id.*)

Dr. Patrick argues that her claims are not barred because her claims accrued on January 9, 2015, when Reliance decided the Other Income appeal and recalculated her benefits under the Rehabilitation Provision. (D.I. 30 at 24) The recalculation was a new benefit determination. (D.I. 35 at 20-21) "Reliance cannot equitably be permitted to perform an extensive recalculation in 2014 and Dr. Patrick have absolutely no judicial rights to challenge the recalculation." (*Id.* at 21) Therefore, Dr. Patrick contends that her complaint was timely because she filed it on February 19, 2015, less than one year from the accrual date.[9] (*Id.*)

On September 12, 2014, Reliance determined that Dr. Patrick was overpaid $123,689.28 because she received Other Income based on her ownership interest in MAGIC. (Tr. at 1751-52) After Dr. Patrick appealed, on January 9, 2015, Reliance reversed its finding in Dr. Patrick's favor. (*Id.*) Consequently, the overpayment issue is moot. However, in issuing the January 9, 2015 decision letter, Reliance, on its own initiative, retained an accountant, Ms. Cardamone, to review additional financial records. (*Id.* at 1645-46) Reliance retroactively recalculated Dr.

---

[9] Dr. Patrick also argues that the statute of limitations was not triggered by the November 16, 2010 decision because Reliance failed to comply with 29 C.F.R. § 2560.503-1(g) in not notifying her of the contractual limitations period in the decision letter. (D.I. 35 at 16) However, the *Mirza* court held that the remedy for non-compliance with § 2560.503-1(g) is to abandon the plan's statute of limitations and adopt the most analogous state law statute of limitations—one year in this case. *Mirza v. Ins. Adm'r. of Am., Inc.*, 800 F.3d 129, 137-38 (3d Cir. 2015). Accordingly, *Mirza* merely stands for the proposition that the court should apply the one year statute of limitations. *Id. Mirza* does not affect the accrual date. *Id.*

Patrick's earnings based on the accountant's finding that Dr. Patrick's benefits should be adjusted using a different formula. (*Id.*) Accordingly, Reliance retroactively reduced Dr. Patrick's 2010 LTD benefits under the Rehabilitation Provision. (*Id.*) Using this recalculation, Reliance determined that from July through October of 2010, Dr. Patrick was underpaid by $17,659.07, but she was overpaid $36,505.68 from January through June and November to December of 2010. (D.I. 34 at 19-20) Dr. Patrick was "credited" for the net underpayment. (*Id.*) However, Reliance continued to take deductions to offset the overpayment. (*Id.*, Ex. A at ¶ 21)

In the January 9, 2015 decision letter, Reliance did not limit its position to repeating its interpretation of the Rehabilitation Provision. Reliance went further in retroactively recalculating Dr. Patrick's LTD benefits based on a new formula prepared by an accountant. (Tr. at 1646) The accountant had no prior involvement with Reliance's original LTD benefit determination. (*Id.*) The decision to recalculate Dr. Patrick's benefits equates to a new adverse benefits determination. Thus, a challenge to Reliance's recalculation is not barred by the one year statute of limitations. To hold otherwise would foreclose any recourse by Dr. Patrick to dispute the new calculation.[10]

Reliance cites *Stafford v. E.I. DuPont De Nemours* for the proposition that a "benevolent" decision to reopen a case does not toll the statute of limitations in ERISA cases. 27 Fed. App'x 137, 140 (3d Cir. 2002). However, *Stafford* is distinguishable because there, the defendant had a procedure to allow employees to attempt to reopen cases, and the court did not "intend to

---

[10] An ERISA plan participant must exhaust her administrative remedies before seeking relief in federal court unless doing so would be futile. *Gregorovich v. E.I. du Pont de Nemours*, 602 F. Supp. 2d 511, 519 (D. Del. 2009). Reliance points out that the January 9, 2015 letter exhausted Dr. Patrick's administrative remedies relative only to her Other Income claim. (D.I. 34 at 12-13) However, Reliance stated in its January 9, 2015 letter that the decision to offset benefits paid during 2010 pursuant to the Rehabilitation Provision was "final," and Dr. Patrick had "exhausted her only administrative appeal pursuant to [the] decision." (Tr. at 1646)

15

discourage such benevolence." *Id.* at 140. In the present action, Reliance did not have a similar procedure to re-open an old case file. Reliance may not use the argument that it conducted an "extra-contractual review" as a sword and a shield to simultaneously adopt a new benefits calculation, but allow Dr. Patrick no recourse to appeal that new calculation. Therefore, Dr. Patrick's claims are not barred by the statute of limitations, as the claim accrued on January 9, 2015, when Reliance notified Dr. Patrick of the new calculation. Any further attempt by Dr. Patrick to appeal it would have been futile, so the suit was timely filed in the following month.

## B.   Whether Reliance's Decisions Were Arbitrary and Capricious

In deciding whether an administrator's conclusion is arbitrary and capricious, courts consider procedural and structural factors of the decision making process. *See Miller v. Am. Airlines*, 632 F.3d 837, 845 (3d Cir. 2011) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116-17 (2008); *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525-26 (3d Cir. 2009)). Dr. Patrick argues that Reliance's structural conflict of interest, coupled with many procedural irregularities, establishes that Reliance's decisions were arbitrary and capricious. (D.I. 30 at 15)

### 1.   Structural conflict of interest

The structural inquiry focuses on how the plan is funded and the financial incentives of the administrator. *Post v. Hartford Ins. Co.*, 501 F.3d 154, 162 (3d Cir. 2007), *overruled on other grounds by Doroshow v. Hartford Life and Acc. Ins. Co.*, 574 F.3d 230 (3d Cir. 2009). The essential question is "whether the administrator's incentives make treating it as an unbiased fiduciary counterintuitive." *Id.* at 163 (citing *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377, 388 (3d Cir. 2000)). The structural conflict of interest "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy . . . ." *Glenn*, 554 U.S. at 117. The reviewing court can give this factor more

16

or less weight depending on the likelihood that the conflict actually affected the administrator's decision. *Id.* Thus, while the conflict of interest does not alter the standard of review, it constitutes a factor that a court must evaluate and then consider in its decision. *See Smith v. Automatic Data Processing, Inc.*, 931 F. Supp. 2d 623, 627 (D. Del. 2013).

It is undisputed that Reliance makes claims determinations and funds benefits to eligible claimants. Reliance does not contest that it uses the Plan's premiums to compensate itself, and therefore a structural conflict of interest exists. (D.I. 34 at 9) However, Reliance argues that this structural irregularity should be overlooked because it is merely a "tie-breaker" for the court to consider among many other factors. (*Id.*) Because the other factors are not "closely aligned," "there is no tie to be broken." (*Id.*)

Although a structural conflict of interest existed, Reliance took steps to minimize that conflict. *See Smith*, 931 F. Supp. 2d at 629 (finding the weight of the structural conflict of interest factor was minimized when defendant took steps to minimize the conflict). For example, Reliance took steps to promote accuracy by re-reviewing claims and reversing its erroneous Other Income finding on appeal. (D.I. 34 at 9) Additionally, Dr. Patrick has not submitted evidence indicating that the conflict actually affected Reliance's decisions. *See Glenn*, 554 U.S. at 117 (the court can give less weight to this factor depending on the likelihood that the conflict affected the defendant's decisions). In fact, Reliance paid Dr. Patrick's benefits without challenging her underlying disability claim. (*Id.*) Therefore, although the court has considered the structural conflict of interest, this factor does not tip the scales in favor of a finding that Reliance's decisions were arbitrary and capricious.

17

### 2. Procedural irregularities

The procedural inquiry focuses on how the claimant was treated by the administrator. *Post v. Hartford Ins., Co.*, 501 F.3d 154, 162 (3d Cir. 2007), *overruled on other grounds by Doroshow v. Hartford Life and Acc. Ins. Co.*, 574 F.3d 230 (3d Cir. 2009). When procedural irregularities are minor or few in number, the level of scrutiny afforded to such irregularities is minor. *Id.* at 165.

### a. Failure to comply with § 503 of ERISA and 29 C.F.R. § 2560.503-1(g)

Dr. Patrick argues that Reliance failed to comply with § 503 of ERISA because it did not set forth specific reasons for its decisions. (D.I. 30 at 16; D.I. 39 at 4-6) Dr. Patrick relies on *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 851 (3d Cir. 2011), for the proposition that noncompliance with § 503 of ERISA is probative of whether a decision to deny benefits was arbitrary and capricious. However, unlike *Miller*, Reliance did not deny benefits to Dr. Patrick altogether, and it did provide a detailed explanation for why and how it came to its adverse benefits decision in both letters. (Tr. at 1638-47, 2606-10)

Additionally, Dr. Patrick argues that Reliance failed to comply with 29 C.F.R. § 2560.503-1(g) in both its 2010 and 2015 decision letters because it did not notify her of the contractual statute of limitations. (D.I. 30 at 16; D.I. 39 at 4-6) However, as Reliance asserts, Dr. Patrick was informed that Reliance reserved all of its rights and defenses under the Plan. (D.I. 34 at 13-14) Moreover, Reliance's failure to give notice of the contractual limitations period nullifies the ability to assert the Plan's contractual provision to argue the timeliness of Dr. Patrick's claims. It does not nullify any state law limitations periods applicable to Dr. Patrick's claims. *See Mirza v. Ins. Adm'r. of Am., Inc.*, 800 F.3d 129, 133 (3d Cir. 2015). Therefore, in this instance, Reliance's failure to include information about the statute of limitations in its

18

decision letters pursuant to 29 C.F.R. § 206.503-1(g) should be considered only a minor procedural irregularity.

### b. Interpretation of the Rehabilitation Provision

Dr. Patrick asserts that Reliance's interpretation of the Rehabilitation Provision constitutes an abuse of discretion. (D.I. 30 at 15-23) According to Dr. Patrick, the Employment Agreement precludes her from receiving a monthly salary draw or base salary from MAGIC while her Overall Capital Account balance was negative. (*Id.* at 5) Because she did not receive a salary while her balance was negative, Dr. Patrick avers that Reliance did not construe the term "earnings received" under the Rehabilitation Provision in an "ordinary and popular sense." (*Id.* at 18-24) Additionally, Reliance's interpretation of language is inconsistent throughout the policy. (*Id.*)

Reliance responds that its interpretation of the Plan was reasonable because even though Dr. Patrick was using her earnings to immediately pay her debt to MAGIC, she was, nonetheless, receiving earnings. (D.I. 34 at 15-18) Dr. Patrick's net income qualifies as "earnings received," despite whether the income is applied to her negative Overall Capital Account balance. (D.I. 28 at 6) "If she was not entitled to the income, the funds could not be used to pay her debt." (*Id.* at 18) Furthermore, Reliance contends that Dr. Patrick cannot escape a benefits reduction or any other debt obligation by automatically rerouting that income. (*Id.* at 19)

The Employment Agreement states:

Employee's gross collections shall [] be reduced by her allocated portion of the shared expenses, and the balance thereof shall be the "total compensation" due to Employee for services rendered.
. . .

Employer and Employee shall calculate such amounts on a quarterly basis, and although Employee may be paid an agreed upon salary "draw" or base salary on a monthly basis, Employer and Employee agree to reconcile such draw against the amounts actually due to the Employee pursuant to paragraph 4 at least quarterly.

(Tr. at 1842)

Dr. Patrick's assertion that the Employment Agreement precludes her from receiving a salary while her Overall Capital Account balance is negative is contrary to the Employment Agreement's language. According to the Employment Agreement, "total compensation" includes gross collections reduced by shared expenses. (*Id.*) Although, "[Dr. Patrick] may be paid an agreed-upon salary 'draw' or base salary on a monthly basis. [MAGIC and [Dr. Patrick] agree to reconcile such draw against the amounts actually due to [Dr. Patrick] pursuant to this paragraph [] at least quarterly." (*Id.*)

The Employment Agreement does not state that Dr. Patrick is ineligible to receive such a draw while operating with a negative Overall Capital Account balance. (*Id.*) Therefore, in months where Dr. Patrick returned to work and netted income, she could have, pursuant to the Employment Agreement, received a salary draw rather than applying the amount directly to her Overall Capital Account balance. Additionally, Reliance correctly points out that Dr. Patrick could satisfy her obligations to MAGIC through alternative sources of income. (D.I. 28 at 19)

The Rehabilitation Provision provides:

> If an insured is receiving a Monthly benefit because he/she is considered Totally Disabled under the terms of this Policy and is able to perform Rehabilitative Employment, we will continue to pay the Monthly Benefit less an amount equal to 50% of earnings received through such Rehabilitative Employment.

(Tr. at 33)

The parties agree that the LTD Plan policy language is unambiguous. (D.I. 28 at 15; D.I. 30 at 18) Where policy language is clear, "a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented." *McGrath v. Home Ins. Co.*, 813 F. Supp. 276, 281 (D. Del. 1993) (quoting *Hallowell v. State Farm Mut. Auto. Ins. Co.,* 443 A.2d

20

925, 926 (Del. 1982)).  Because the policy language at issue is unambiguous, "the parties will be

bound by its plain meaning."  *Id*.  Moreover, Reliance has discretion to interpret the policy

language whereas, here, the Plan does not define the term "earnings."  *See Sivalingam v. Unum

Life Ins. Co. of Am.*, Civil Action No. 09-4702, 2011 WL 1584055, at *6 (E.D. Pa. Apr. 26,

2011) (citing *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Howley v.

Mellon Fin. Corp.,* 625 F.3d 788, 795 (3d Cir.2010)); (Tr. at 15)

Reliance cites to *Day v. AT&T Disability Income*, 698 F.3d 1091 (9th Cir. 2012)[11] and

*Parke v. First Reliance Std. Life Ins. Co.*, 368 F.3d 999 (8th Cir. 2004)[12] to support its position

that Dr. Patrick was earning income.  (*Id.* at 17-19) In *Day*, a disabled claimant receiving both

LTD and pension benefits chose to roll over his pension benefits into an IRA account.  698 F.3d

at 1094.  The claimant's LTD plan provided that his LTD benefits would be reduced by the

amount of pension benefits received.  *Id.*  Following a reduction in his LTD benefits pursuant to

the plan, the claimant argued that because his pension benefits were being automatically rolled

over into an IRA account, he never actually received the pension.  *Id.* at 1095.  Therefore his

LTD benefits should not have been reduced.  *Id.* The court disagreed, holding that to "receive"

means to "take into possession or control," and that by rolling his pension into an IRA, the

claimant "received" the pension because he had control over the assets.  *Id* at 1097 (citing

*Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 624-25 (9th Cir. 2007)).

---

[11] Although *Day* arises from the Ninth Circuit, no court within the Third Circuit has treated the
case negatively.
[12] The policy language and issue of reduced disability benefits in *Parke* is very similar to the
present action.  Although *Parke* arises from the Eighth Circuit, the Third Circuit has treated the
case favorably, albeit on separate grounds.  *See Skretvedt v. E.I. DuPont Nemours*, 372 F.3d 193,
212 n.26, 215 n.30 (3d Cir. 2004); *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300,
313-14 (3d Cir. 2008).  There is no negative treatment of the case within this Circuit.

Therefore, the court held that the plan administrator did not abuse its discretion by reducing the claimant's LTD benefits.

In *Parke*, a similar LTD plan allowed for a claimant's benefits to be reduced by the amount of benefits received from other sources. 368 F.3d 999, 1005 (8th Cir. 2004). The claimant was entitled to $1500 per month in gross social security benefits. *Id.* However, she elected to have taxes withheld from the amount, so her net benefits were only $1223.30. *Id.* The court held that the plan administrator did not abuse its discretion when it reduced the claimant's benefits by the full $1500 because the claimant could have elected to receive the full $1500 and pay taxes at the end of the year. *Id.* at 1005-06 (citing *Trujillo v. Cyprus Amax Minerals Co. Ret. Plan Comm.*, 203 F.3d 733, 736-38 (10th Cir. 2000) (holding that a plan could offset an entire worker's compensation benefit despite a portion of the amount immediately going to beneficiary's attorney)).

Dr. Patrick's argument that she never received earnings is similar to the arguments rejected in *Day* and *Parke*. Dr. Patrick attempts to distinguish her case by asserting that she, unlike the claimants in *Day* and *Parke*, never controlled her earnings because under the Employment Agreement, she is not entitled to income until her Overall Capital Account balance is positive. (D.I. 35 at 24) Dr. Patrick fails to direct the court to the specific language in the Employment Agreement, which she contends prohibits her from being paid when this account balance is "negative." Consequently, Dr. Patrick's argument is not supported by the Employment Agreement. (Tr. at 1842) Additionally, *Day* and *Parke* support the rationale that by applying her income to her Overall Capital Account balance, Dr. Patrick controlled and "received" her income. The court finds Reliance's construction of "earnings received" to be the

more reasonable one.  Dr. Patrick must have "received" these earnings if the funds could be diverted to her Overall Capital Account.

The character of "earnings received" does not change based on whether it is received by Dr. Patrick in the form of a paycheck or received as an offsetting payment reducing her negative Overall Capital Account balance.  In both instances, Dr. Patrick is realizing and controlling the same benefit, i.e. earnings generated from providing professional medical services.

Additionally, Dr. Patrick argues that Reliance inconsistently interprets "earnings received," throughout the policy.  (D.I. 30 at 19-22) For example, she states that Reliance defines "Covered Monthly Earnings" as a figure based on her salary, which excludes amounts earned as income through commission, overtime, and bonuses.  (*Id*. at 21; Tr. at 11) She argues that "Covered Monthly Earnings" are based on salary, so Reliance's interpretation that "earnings" under the Rehabilitation Provision include "net income," "money earned," or "something earned" is inconsistent with that provision and its recalculations.  (D.I. 30 at 19-21) However, what qualifies as salary pursuant to the definition of "Covered Monthly Earnings" need not be the same as what Reliance considers to be "earnings received" under the Rehabilitation Provision.  If Reliance intended to exclude sources of income from "earnings received," as with "salary" under "Covered Monthly Earnings," Reliance could have included that language in the Rehabilitation Provision.  (Tr. at 11) Moreover, Reliance could have used the term "salary" in the Rehabilitation Provision, instead of choosing the term "earnings received."  (*Id*.)

Dr. Patrick also argues that Reliance's interpretation of "earnings received" under the Rehabilitation Provision is inconsistent with the determination that offsets were not appropriate under the Other Income provision, as the Other Income provision also required Dr. Patrick to be "eligible to receive" "wages, salary or other compensation."  (D.I. 39 at 10) However, Reliance's

23

decision with respect to the Other Income provision relates to whether Dr. Patrick had received

passive income. (Tr. at 1642-43) The Other Income provision is a separate, unrelated contractual

provision that provides for offsets if Dr. Patrick receives income different from earnings as that

term is used in the Rehabilitation Provision. (*Id.* at 1639)

Based on the Employment Agreement, analogous cases, and the unambiguous Plan

language, Reliance's interpretation of "earnings received" under the Rehabilitation Provision

was not "without reason, unsupported by substantial evidence or erroneous as a matter of

law...." *Johnson v. UMVA Health & Ret. Funds*, 125 F. App'x 400, 405 (3d Cir. 2005).

Therefore, Reliance's interpretation of the Rehabilitation Provision was not arbitrary and

capricious.

### c. Reliance's benefits recalculation

The remaining issue is whether Reliance's 2015 recalculation constituted an abuse of

discretion.[13] Dr. Patrick argues that Reliance's benefits recalculation resulted in a double

deduction of her benefits for 2010. (D.I. 30 at 23) According to Dr. Patrick, Reliance reduced

her benefits by $35,912.41 in 2010, and then applied an additional $4,563.21 monthly reduction

to the 2010 benefits based on the accountant's findings. (*Id.*)

In its January 9, 2015 letter, Reliance gave a complete explanation for its recalculation

methods. (Tr. at 1638-47) Reliance explained that after analyzing Dr. Patrick's monthly income

statements, Ms. Cardamone determined that a "true-up" of certain expenses was applied on a

periodic basis and because of this, certain months showed overstated income amounts. (*Id.* at

1645) Additionally, Ms. Cardamone determined that because Dr. Patrick had no control over the

---

[13] It is undisputed that Reliance reversed its Other Income finding, which was based on the 2014 recalculation. Therefore, that issue is moot.

expenses allocated to her on a monthly basis, it was more reasonable to use a monthly average of income calculated from her annual net profit or loss.  (*Id.*) Reliance then applied Ms. Cardamone's findings in its subsequent recalculation.

Reliance also provided charts to support that it did not take a "double deduction" with respect to Dr. Patrick's benefits.  As reflected by the following chart, Reliance's recalculation showed that Dr. Patrick was underpaid from July to October in 2010:

| Benefit Period | Amount paid in 2010 | Amount that should have been paid | Additional benefit due to Plaintiff |
|---|---|---|---|
| 7/8/2010-8/8/2010 | $4,328.59 | $7,436.79 | $3,108.20 |
| 8/8/2010-9/8/2010 | $1,200.00 | $7,436.79 | $6,236.79 |
| 9/8/2010-10/8/2010 | $5,359.50 | $7,436.79 | $2,077.29 |
| 10/8/2010-11/8/2010 | $1,200.00 | $7,436.79 | $6,236.79 |
| **Total** | | | $17,659.07 |

(D.I. 34 at 19) However, Reliance did not issue a reimbursement check because it determined that Dr. Patrick was overpaid as follows:

| Benefit Period | Amount paid in 2010 | Amount that should have been paid in 2010 (per 2015 recalculation) | Overpayment |
|---|---|---|---|
| 1/8/2010-2/8/2010 | $12,000.00 | $7,436.79 | $4,563.21 |
| 2/8/2010-3/8/2010 | $12,000.00 | $7,436.79 | $4,563.21 |
| 3/8/2010-4/8/2010 | $12,000.00 | $7,436.79 | $4,563.21 |
| 4/8/2010-5/8/2010 | $12,000.00 | $7,436.79 | $4,563.21 |
| 5/8/2010-6/8/2010 | $12,000.00 | $7,436.79 | $4,563.21 |
| 6/8/2010-7/8/2010 | $12,000.00 | $7,436.79 | $4,563.21 |
| 11/8/2010-12/8/2010 | $12,000.00 | $7,436.79 | $4,563.21 |
| 12/8/2010-1/8/2010 | $12,000.00 | $7,436.79 | $4,563.21 |
| **Total** | | | 36,505.68 |

(*Id.* at 19-20)

According to Reliance, after it applied the $4,563.21 monthly reduction, it determined that Dr. Patrick had been underpaid by $17,659.07 for the period of July through November or 2010, and overpaid by $36,505.68 over the course of the other eight months in 2010.  (*Id.* at 19-

20) Reliance clarified that its calculation amounts to an offset of the amount she was overpaid by the amount she was underpaid, leaving a net overpayment of $18,846.61 for 2010. (*Id.* at 20) In Dr. Patrick's reply brief, she states that she does not object to the court "us[ing]" and "consider[ing]" the Affidavit submitted by Reliance, which sets forth its explanation. (D.I. 39 at 2-3, 9)

Under the arbitrary and capricious standard, Dr. Patrick has the burden to prove that Reliance's denial of benefits was "without reason, unsupported by substantial evidence or erroneous as a matter of law...." *Johnson v. UMVA Health & Ret. Funds*, 125 F. App'x 400, 405 (3d Cir. 2005). Because Reliance made its determination based on an accountant's analysis of Dr. Patrick's financials, and Dr. Patrick does not dispute Reliance's explanation with respect to the alleged overpayment, the court finds that Reliance's recalculation was not arbitrary and capricious.

The court recommends granting Reliance's motion for summary judgment, and denying Dr. Patrick's motion for summary judgment. Accordingly, Dr. Patrick's request for an award of attorney's fees should be denied. (D.I. 30 at 25)

### C. Reliance's Motion for Leave to File a Sur-Reply

In connection with the briefing on Dr. Patrick's motion, Reliance moved for leave to file a sur-reply to address "new yet equally inaccurate arguments" asserted in Dr. Patrick's reply brief. (D.I. 41 at 1) I recommend that the court deny Reliance's motion for leave to file a sur-reply as moot. "A Court may grant leave to file a sur-reply if it responds to new evidence, facts, or arguments." *St. Clair Intellectual Prop. Consultants, Inc. v. Samsung Elecs. Co. Ltd.*, 291 F.R.D. 75, 80 (D. Del. 2013) (citing *Belden Techs., Inc. v. LS Corp.*, C.A. No. 08-823-SLR, 2010 WL 11205228, at *1 (D. Del. July 14, 2010); *Walsh v. Irvin Stern's Costumes*, 2006 WL 166509,

at *12 (E.D. Pa. Jan. 19, 2006)). However, Reliance's contentions do not alter the outcome of the court's recommendations on the summary judgment motions.

## V.   CONCLUSION

For the foregoing reasons, and as indicated by the chart, *infra*, I recommend that the court deny Dr. Patrick's motion for summary judgment, grant Reliance's motion for summary judgment, and deny Reliance's motion for leave to file a sur-reply as moot.

| Party | Motion | Recommendation |
|---|---|---|
| Plaintiff, Amy Patrick, M.D. | Motion for Summary Judgment (D.I. 29) | Denied |
| Defendant, Reliance Standard Life Insurance Co. | Motion for Summary Judgment (D.I. 27) | Granted |
| Defendant, Reliance Standard Life Insurance Co. | Motion for Leave to File Sur-Reply in Opposition to Plaintiff's Motion for Summary Judgment (D.I. 41) | Denied as Moot |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: August 31 , 2016

Sherry R. Fallon
United States Magistrate Judge