IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMY PATRICK, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 15-169-SLR/SRF |
| | ) |
| RELIANCE STANDARD LIFE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington this 29th day of September, 2016, having reviewed the objections filed by plaintiff to the Report and Recommendation issued by Magistrate Judge Fallon on August 31, 2016, as well as defendant's response thereto;

IT IS ORDERED that the Report and Recommendation (D.I. 47) is affirmed and the objections thereto (D.I. 48) overruled, for the reasons that follow:

1. **Legal standard.** A district judge is charged with conducting a de novo review of a magistrate judge's report and recommendation to which specific, written objections are made. 28 U.S.C. § 636(b)(1); *see also Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). The district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Although review is de novo, the district judge, in exercising her sound discretion, is permitted to rely on the recommendation of the magistrate judge to the extent she deems proper. *United States v. Raddatz*, 447 U.S. 667, 676-677 (1980); *Goney v.*

*Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

2. **Factual background.** Plaintiff, a gastroenterologist, entered into a shareholder-physician employment agreement (the "Employment Agreement") with Mid-Atlantic G.I. Consultants ("MAGIC") in 2005. The Employment Agreement provides with respect to "total compensation" as follows:

> Employer shall first determine the gross collections . . . from all clinical services provided by the Employee, and to such amount shall be added the Employee's equal (prorated) share of any net profit generated by all non-shareholder physicians and/or other employees employed by the Employer (the sum of which is referred to below as Employee's "gross collections"). . . .
>
> From the sum of such Employee's gross collections. . . shall be subtracted the Employee's allocation of the "shared expenses" . . . defined as the rent, utilities and associated costs for all offices used by the physician employed by the Employer, all of the telephone expenses of the Employer, the costs, salaries, and retirement plan contributions, etc. of all non-physician staff employed by the Employer, and all other of the Employer's expenses for which the shareholders of the Employer agree are used or are to be used in common. . . .
>
> Employee's gross collections shall then be reduced by her allocated portion of the shared expenses, and the balance thereof shall be the "total compensation" due to Employee for services rendered. . . .
>
> Employer and Employee shall calculate such amounts on a quarterly basis, and although Employee may be paid an agreed upon salary "draw" or base salary on a monthly basis, Employer and Employee agree to reconcile such draw against the amounts actually due to the Employee . . . at least quarterly.

(D.I. 20 at 1841-42)[1]

3. Defendant issued a Long Term Disability Plan ("the Plan") to MAGIC in September 2007, which plan is governed by ERISA. Under the Plan, defendant

---

[1]The Joint Stipulated Administrative Record, which is electronically docketed under seal.

2

"serve[s] as the claims review fiduciary with respect to the insurance policy and the Plan." (*Id.* at 15) As the claims review fiduciary, defendant "has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." (*Id.*) In dispute is defendant's interpretation of the Plan's "Rehabilitation Provision," which provides that if an insured employee is Totally Disabled, but still able to perform work on a limited basis, the employee's benefits under the Plan are reduced by 50% of earnings received through such employment. (*Id.* at 6-7) The Rehabilitation Provision states:

> "Rehabilitative Employment" means work in any gainful occupation for which the insured's training, education or experience will reasonably allow. The work must be supervised by a Physician or a licensed or certified rehabilitation specialist approved by us. Rehabilitative Employment includes work performed while Partially Disabled, but does not include performing all the material duties of his/her Regular Occupation on a full-time basis.
>
> If an insured is receiving a Monthly benefit because he/she is considered Totally Disabled under the terms of this Policy and is able to perform Rehabilitative Employment, we will continue to pay the Monthly Benefit less an amount equal to 50% of earnings received through such Rehabilitative Employment.

(*Id.* at 33) The Plan does not define the terms "earnings" or "earnings received."

4. Due to nerve damage sustained during a surgical procedure, plaintiff was no longer able to perform her work as a full-time gastroenterologist; her claim under the Plan was approved in 2009. Although defendant has paid plaintiff benefits under the Plan since 2009, the parties dispute the calculation of the monthly benefit owed to plaintiff. More specifically, plaintiff works part time, therefore, under the Rehabilitative Employment provision of the Plan, defendant is directed to deduct from plaintiff's monthly benefit "50% of earnings received." According to plaintiff, she is not eligible to

3

"receive" any earnings until her obligations to the medical practice group (e.g., her pro rata share of the group's expenses) are paid. In support of her position, plaintiff relies on a letter from the Managing Partner at MAGIC, who asserts that physicians must meet their share of the overhead before they receive any earnings. (*Id.* at 1630)

5. Defendant notes that neither plaintiff nor MAGIC's Managing Partner cite to any language in the Employment Agreement which supports their interpretation. According to defendant, even if plaintiff does not physically receive those earnings that are used to satisfy the obligation to pay back her overhead deficit, she receives the benefit of the income and had the choice of paying the overhead deficit with other funds. Defendant refers the court to two cases which, although not precedential, are persuasive authority for the proposition that controlling the use of income is the equivalent of receiving the income, as the recipient benefits from the income in some way. See *Day v. AT&T Disability Income*, 698 F.3d 1091 (9th Cir. 2012) (disabled claimant who chose to roll over his pension benefits into an IRA account was still in receipt of such benefits), and *Parke v. First Reliance Std. Life Ins. Co.*, 368 F.3d 999 (8th Cir. 2004) (a disabled claimant who elected to have taxes withheld from her gross social security benefits was still in receipt of the withheld portion of such benefits).

6. **Analysis.** I assume, for purposes of this matter, that the practice of MAGIC is consistent with plaintiff's position, that is, plaintiff will not physically receive any income until her overhead deficit is paid off. Nevertheless, Third Circuit precedent is consistent with defendant's position, as found by Magistrate Judge Fallon. In the first instance, if a plan grants discretionary authority to an administrator or fiduciary, a court

4

must apply the arbitrary and capricious standard when reviewing administrative decisions. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). Under this standard, the plaintiff has the burden of showing that the administrator's denial of benefits was "without reason, unsupported by substantial evidence or erroneous as a matter of law" using the evidence available to the administrator at the time of the decision. *Johnson v. UMWA Health & Ret. Funds,* 125 F. App'x 400, 405 (3d Cir. 2005). To put the point another way, since the Plan at bar "vested the administrator with discretion to interpret the [Plan], under [the Third Circuit's] well-established case law [I] have no option but to uphold this interpretation unless it is arbitrary or capricious." *Fleisher, D.M.D. v. Standard Ins. Co.*, 679 F.3d 116, 125 (3d Cir. 2012). The Court in *Fleisher* went on to suggest that, even in the face of a different interpretation that is supported by facts of record, "the relevant inquiry is not whether it is reasonable to interpret" the Plan as proposed by the claimant, "but whether it is unreasonable to interpret it" as proposed by the Plan administrator. *Id.* at 127.

7. I see no error in Magistrate Judge Fallon's conclusion that defendant's interpretation of the Plan language is neither arbitrary nor capricious. Clearly plaintiff is benefitting from the use of her earnings to offset the overhead deficit. And although it may well be the practice of plaintiff's employer to cover the shared overhead before any earnings are physically distributed, there is no language in the Employment Agreement that mandates that practice. Given the very deferential standard of review imposed by Third Circuit precedent, I do not find plaintiff's interpretation of the Plan sufficiently persuasive to establish that defendant's contrary interpretation is unreasonable.

THEREFORE, IT IS FURTHER ORDERED that defendant's motion for summary

judgment (D.I. 27) is granted, plaintiff's motion for summary judgment (D.I. 29) is denied, and defendant's motion for leave to file a sur-reply (D.I. 41) is denied as moot.

IT IS FURTHER ORDERED that the Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff.

_____
United States District Judge